Clifford Durham et al., as Administrators of the Estate of Anthony L. Durham, Deceased, Respondents, v. Leo T. Melly et al., as Executors of Clifford C. Thomas, Deceased, et al., Appellants. (Action No. 1.)

Bella M. Thomas, as Administratrix of the Estate of Payne A. Thomas, Deceased, Appellant, v. Mae S. Manfred et al., as Administrators of the Estate of Anthony L. Durham, Deceased, Respondents. (Action No. 2.)

Third Department, November 16, 1961.

*Dunk, Conboy, McKay & Bachman (Claude H. Dunk* of counsel), for appellants in Action No. 1.

*Robert H. Halliday* for respondents in Action No. 1.

*Dreiband, Bleecker & Silberman (Alexander Dreiband* of counsel), for appellant in Action No. 2.

*Scanlon, Wright, Willmott & Aylward (Daniel Scanlon* of counsel), for respondents in Action No. 2.

REYNOLDS, J. These actions arose out of a head-on collision which occurred at 12:15 A.M. on November 23, 1958 on Route 56 in St. Lawrence County between a Chevrolet automobile owned by Mae S. Manfred and operated by Anthony L. Durham, and a Ford automobile owned by Clifford C. Thomas and operated by Payne A. Thomas. Both Anthony L. Durham and Payne A. Thomas died of injuries resulting from the accident. Action No. 1 was brought by the administrators of Anthony L. Durham against the executors of the will of Clifford C. Thomas and the administratrix of Payne A. Thomas. Action No. 2 was brought by the administratrix of Payne A. Thomas against the administrators of Anthony L. Durham and Mae S. Manfred. The two cases were tried together and the jury returned a verdict in favor of respondent in Action No. 1 in the total amount of $20,000 and found no cause of action in Action No. 2. Appellants moved to set aside the verdicts in both actions upon the grounds set forth in section 549 of the Civil Practice Act. It is from the denial of these motions and the judgments thereafter entered that appellants bring this appeal.

As a result of the collision Thomas and the three passengers in his car were instantly killed and Durham died 19 days later. There were thus no eyewitnesses to the accident.

The highway on which the accident occurred runs generally north and south. It is of concrete construction and consists of two lanes — each 11 feet wide. The lanes are designated by a tar sealer joint and a single broken white line. At least, in the vicinity of the impact, the shoulders of the highway are sufficiently wide enough to accommodate an automobile completely off the paved portion.

Durham was proceeding in a southerly direction toward Hannawa Falls from Potsdam; Thomas was proceeding northward toward Potsdam from Hannawa Falls. The collision occurred on a straightaway portion of the highway shortly after the Thomas' vehicle had negotiated a slight curve to its left.

Photographic evidence indicates that the collision took place in the northbound lane. Marks on the road also indicate that at impact at least a part of Durham's car was 3.5 feet in Thomas' lane. Faced with the fact that Durham was in the wrong lane at impact the attorney advancing his claim postulated that the accident occurred when Durham, proceeding in his own lane and suddenly confronted with the Thomas' car in the wrong lane, applied his brakes and pulled to his left to avoid a collision only to have the Thomas' car return to its proper lane and strike him head on. The only evidence to support this theory in the record is a mark running from the point of impact 74.8 feet in a northerly direction and the testimony of one Belva Campbell. The mark indicates that Durham's car proceeded 34.4 feet in its own lane and then for the last 40.4 feet prior to impact was in the wrong lane. Respondents assert that this mark is a skid mark and that the course of the skid supports their theory of the accident. The record, however, does not reveal that the mark was ever identified as a skid mark and without such identification it is equally inferable that it was caused by a flat tire riding on its rim as the application of the brakes by Durham. Belva Campbell testified that as she was riding along Route 56 toward Potsdam at about 12:00 on the night of the accident, she looked out the rear window of the car in which she was riding and saw the headlights of a car which was three quarters of a mile behind the car in which she was riding and that the position of the headlights indicated that the car was on the wrong side of the road. She also testified that she recognized Durham as he passed by in the opposite direction. She could not, however, identify the car behind her

as the Thomas' car and there is no evidence that there were no other cars on the road.

A jury may base its determination on circumstantial evidence but only if such evidence supports the inference of negligence. The facts presented here allow only for speculation as to what actually occurred (*Lamb* v. *Union Ry. Co.*, 195 N. Y. 260). There are no facts presented in the record from which it can reasonably be inferred that the Thomas' car was on the wrong side of the road immediately prior to impact. Even if Belva Campbell could have identified the Thomas' car as the one whose headlights she saw on the wrong side of the road or respondents could have shown that only the Thomas' car was on the road, it would only be speculation in this case to assume that the Thomas' car continued to travel on the wrong side of the road from the point last viewed by the witness to a point just prior to impact.

Appellants also raise as prejudicial error statements by the Trial Judge before the jury on their motion to strike the testimony of Belva Campbell on the ground that she had not identified the car behind her as the Thomas' car. The court said that it was his recollection that the witness " finally testified it was the Thomas car." After further discussion on the motion the Trial Judge reiterated his position. In fact, no such identification had been made by the witness and the Trial Judge so instructed the jury during the charge. Admittedly improper remarks made by the Trial Judge in the course of the trial may be cured by admonishing the jury to disregard them. This rule, however, is subject to the following limitation. " [W]here a remark * * * is so prejudicial that the impression thereby produced in the minds of the jury cannot reasonably be expected to be removed by an admonition or corrective statement, the impropriety is not thereby cured, nor is the error cured where the form and substance of the corrective statement is not sufficient to remove the prejudicial effect of the improper * * * remark." (89 C. J. S., Trial, § 659.) In the instant case the whole theory of respondents' case depends on placing the Thomas' car on the wrong side of the road just prior to impact. The testimony of Belva Campbell that she saw the lights of a car on the wrong side of the road is the basic foundation for this theory. To allow the jury throughout the following 10 days of trial to believe that she had identified the car as the Thomas' car, when in fact she had not, was so prejudicial that the corrective efforts made on the charge could not cure the error.

We also agree with the appellants' contention that the alcohol blood test was improperly admitted into evidence. Without

discussing the propriety of the taking of the sample or the manner in which it was taken, it is sufficient to point out that the chain of possession and unchanged condition from the taking of the sample to the hospital laboratory to the performance of the analysis is not established (*People* v. *Sansalone,* 208 Misc. 491). Lawrence testified that he took the sample to the hospital laboratory but did not state where or with whom he left it. To add to the speculation Eggleson, who took the sample, wrote " Payne Thomas " on a gum sticker already affixed to the vial but Thompson, the biochemist who performed the analysis, testified that when he received the specimen the vial was without a label but was in a cardboard mailing container which had the name of Payne Thomas on it.

The judgments should be reversed and new trials ordered, with costs to abide the event.

BERGAN, P. J., COON, GIBSON and HERLIHY, JJ., concur.

Judgments reversed, on the law and the facts, and new trials ordered, with costs to abide the event.