238 So.2d 534 (1970)
Dave L. PEARCE, Commissioner of Louisiana Department of Agriculture, Plaintiff and Appellant,
v.
Carl GUNTER, Defendant and Appellee.
No. 3131.
Court of Appeal of Louisiana, Third Circuit.
July 29, 1970.
Rehearing Denied August 26, 1970.
Writ Refused October 7, 1970.
*535 Joel B. Dickinson, Baton Rouge, for plaintiff-appellant.
Garrett, Ryland & Downs, by Donald M. Garrett, Alexandria, for defendant-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
The plaintiff, Dave L. Pearce, Commissioner of Agriculture for the State of Louisiana, filed this suit against the defendant, Carl Gunter, for a mandatory injunction ordering Gunter to present and restrain his cattle for brucellosis testing and identification. From an adverse judgment, plaintiff appealed.
The substantial issue is whether plaintiff properly identified the blood sample allegedly taken from defendant's cow. Plaintiff sought to introduce the sample to prove that defendant's herd "has shown evidence of brucellosis infection" under the provisions of LSA-R.S. 3:2221, subd. A, which reads as follows:
"Any person owning or having charge of any male or female cattle over eight months of age in a herd which has shown evidence of brucellosis infection, or has intermingled with or otherwise been exposed *536 to brucellosis infected animals, "upon at least thirty days prior written notification by an authorized agent of the Livestock Sanitary Board shall present and restrain the cattle for identification and testing, and such infected herds shall be retested until these herds have become classified brucellosis negative as defined in Regulation 17 of the Livestock Sanitary Board. Cattle in open range country shall be worked at a time to correspond to the normal procedure for handling such cattle."
The evidence shows that on January 15, 1968 the defendant checked in 3 cows at Hodges Livestock Auction in Alexandria. The check-in slip, which is filed in evidence, shows that each cow was tagged with a number. A piece of heavy paper, showing the cow's number, was glued on each hip of each cow. The cow with which we are concerned is No. 72-HA-9385, which will hereafter be referred to simply as No. 385.
On the morning of the sale, January 17, 1968, an inspector for the State Department of Agriculture went to the auction to check the cows. He was primarily interested in finding any stolen cattle, but in the course of his inspection he identified each cow with its respective number on the check-in slip. The inspector testified he first went to the office and picked up the check-in slips for all the cattle to be sold that day. Then he went to the barn and located and identified each cow by its number. The check-in slip shows that he found No. 385 and described it on the slip as a red cow with a white face.
The evidence also shows that on January 17, 1968 cow No. 385 was sold at the auction to the Thompson Packing Company in Thibodeaux, Louisiana. This is evidenced by the sale slip for No. 385 and by a check to the defendant, Carl Gunter, in payment of this and other cattle which he sold that day.
After proof was made of the sale of the cow to Thompson Packing Company, plaintiff called as his next witness Dr. Rex Barnett, a microbiologist, who has charge of the United States Brucellosis Testing Laboratory in Baton Rouge, Louisiana. Dr. Barnett first described generally the procedure used for testing cows of brucellosis. He said the cow is not tested at the sale barn. Instead, an employee of the slaughter house takes a blood sample from the cow and places it in a tube. Then he takes the back tag from the carcass, wraps it around the blood sample and places it in a box of samples which is shipped to Baton Rouge. A later witness explained that the slaughter houses are paid 25¢ a head for this service.
Dr. Barnett then identified a "Brucellosis Test Record" showing that on February 2, 1968, his laboratory tested 52 blood samples from Thompson Packing Company. On this document appear the back tag numbers of the 52 cows and the results of the tests. He explained that this document was prepared in his office under his supervision from the blood samples and the back tags which they received from the packing house.
Dr. Barnett was then asked to give the results of the test on cow No. 385. At this point, counsel for defendant objected on several grounds, including the lack of proper identification of blood sample No. 385 as having been drawn from defendant's cow. The substance of the objection is that no one from the slaughter house testified to show that when cow No. 385 was slaughtered, the blood sample was taken, placed in a tube, wrapped in the back tag and shipped to the laboratory in Baton Rouge. The district judge sustained the objection, and the evidence was allowed only under an offer of proof.
We agree with the trial judge that the blood sample was not properly identified as having come from cow No. 385. It is fundamental in the law of evidence that an article or substance which is introduced as demonstrative evidence, or as to which a witness is asked to testify, must be sufficiently identified as the one *537 involved in the occurrence in question. State v. Foret, 196 La. 675, 200 So. 1 (1941); 32 C.J.S. Verbo Evidence § 607, pp. 762-768. Although the requirements might well be less stringent when dealing with animals than in dealing with humans, before any result of a blood test analysis can be admitted in any civil or criminal case, the party seeking to introduce such evidence must first lay a proper foundation for its admission. The foundation must connect the specimen with its source, show that it was properly taken by an authorized person, properly labeled and preserved, properly transported for analysis, and properly tested. Lessenhop v. Norton, 153 N.W. 2d 107 (Iowa 1967); Bauer v. Veith, 374 Mich. 1, 130 N.W.2d 897 (1964); Apodaca v. Baca, 73 N.M. 104, 385 P.2d 963 (1963); Erickson v. North Dakota Workmen's Compensation Bureau, 123 N.W.2d 292 (N.D. 1963); Durham v. Melly (Thomas v. Manfred), 14 A.D.2d 389, 221 N.Y.S.2d 366 (1961); Utah Farm Bureau Ins. Co. v. Chugg, 6 Utah 2d 399, 315 P.2d 277 (1957); Benton v. Pellum, 232 S.C. 26, 100 S.E.2d 534 (1957); Nesje v. Metropolitan Coach Lines, 140 Cal.App.2d 807, 295 P.2d 979 (1956). The last cited case indicates that the label on a container of blood is not, in the absence of testimony of the person who took the blood, proof of the source of blood.
In this case, we have only testimony concerning a procedure, and no testimony from the person who allegedly took the blood from defendant's cow. It was incumbent on the plaintiff to show, by the testimony of someone at the slaughter house, that the source of the blood sample was defendant's cow No. 385. In the absence of such testimony it is not proved that the blood came from the cow in question. Dr. Barnett testified that he received the blood sample and tag No. 385. But he has no actual knowledge that the blood came from the cow bearing that tag and any testimony by him in this regard would be hearsay.
In his petition, plaintiff also prayed for the injunction under LSA-R.S. 3:2221, subd. C., which reads as follows:
"When the known infected herds in any parish have been reduced to five percent or less of the total number of herds in the parish, as determined by the latest official Census of Agriculture published by the United States Department of Commerce, Bureau of Census, the Livestock Sanitary Board shall have the authority to require a complete test of any herd in the parish which has had less than fifteen percent of the adult cattle officially tested within the last three years."
There is no evidence whatever to satisfy the requirement of Section C, quoted above, that defendant has had less than 15% of his adult cattle officially tested within the last 3 years. The defendant did not testify. Dr. Lucien Lewy and Mr. Irl White, Jr., testified generally as to the official census figures and the number of infected herds in Rapides parish. Much of their testimony was objectionable as hearsay. In any event, there is no evidence to show that defendant's herd has not been tested in the last 3 years. For this reason, plaintiff is not entitled to an injunction under Section C of the statute.
For the reasons assigned, the judgment appealed is affirmed.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.