WATSON, Judge.
Plaintiff, Louisiana Livestock Sanitary Board, filed this suit against defendant, Arlington Manuel, to obtain a mandatory injunction compelling Manuel to pen his cattle for identification and brucellosis *349 re-testing.[1] The trial court concluded that the Board had not carried its burden of proving brucellosis infection in Manuel’s cattle and dismissed the suit. The Board has appealed.
The principal issue is whether there is manifest error in the trial court’s conclusion that the Board failed to prove its case. Subsidiary issues relate to the sufficiency and admissibility of various evidence.
LSA-R.S. 3:2221 provides that anyone owning cattle with evidence of brucellosis infection or cattle that have been exposed to brucellosis infection shall present and restrain the cattle for identification and testing. Pertinent to this matter are sections A and B of the statute:
“A. Any person owning or having charge of any male or female cattle over eight months of age in a herd which has shown evidence of brucellosis infection, or has intermingled with or otherwise been exposed to brucellosis infected animals, upon at least thirty days prior written notification by an authorized agent of the Livestock Sanitary Board shall present and restrain the cattle for identification and testing, and such infected herds shall be retested until these herds have become classified brucellosis negative as defined in Regulation 17 of the Livestock Sanitary Board. Cattle in open range country shall be worked at a time to correspond to the normal procedure for handling such cattle.
B. Evidence of infection includes finding one or more reactors to an official brucellosis agglutination test on animals bred on the farm, at livestock auction market, at a slaughter establishment or concentration point, or upon official report of a positive brucellosis milk ring test of a dairy herd.”
The Board’s petition for a mandatory injunction alleged: that Manuel had consigned certain cattle to the Tate Commission Barn in Ville Platte; that among these cattle were two animals which were purchased by a Mississippi meat company; and that the blood of the two tested positive for brucellosis.
A rule was issued by the trial court against Manuel to show cause why his cattle should not be penned and tested.
This matter was tried on November 3, 1975. The Board produced three witnesses and various documents to establish its case.
Plaintiff’s first witness, Edwin Tate, testified that in March, 1973 he was a “co-manager” of the commission barn but did not have custody of the records relative to Manuel’s cattle. Plaintiff’s counsel stated that he would produce another witness who was custodian later in the hearing but failed to do so.
Plaintiff’s next witness was Curtis Brown, an employee of the Louisiana Department of Agriculture. He established the method of tagging cattle at sales, but could not testify specifically concerning any of Manuel’s cattle.
Plaintiff’s final witness, Ollie Newton, also with the Department of Agriculture, testified that he went to Manuel’s home on October 25, 1973, and that Manuel declined to allow his cattle to be tested. On cross it was established that Newton did not know how many, if any, cattle Manuel had on that date.
The documents relied on by the Board were chiefly: (1) the records of Tate Commission Barn identifying the cattle; (2) affidavits from persons in Mississippi relating to blood tests for brucellosis; and (3) copies of reports on brucellosis tests. The latter are not affidavits and were clearly inadmissible.
*350 The first essential point in the Board’s case was to establish that the cattle, whose blood was alleged to show brucellosis, were Manuel’s. To do so it was essential to prove the tagging and identification records of the commission barn.
As noted above, Edwin Tate, a co-manager of the commission barn, testified that he did not prepare the records and had no personal knowledge of the tagging and identification of the cattle. Jennings Tate and his wife, the bookkeeper, who had custody of the records of the commission barn, were not called to testify.
The trial court correctly declined to admit the records into evidence. A proper foundation must be laid to receive business records; here there was none.
The Board failed at the outset to demonstrate that the cattle were Manuel’s. It follows that the blood samples to which the affidavits relate were not identified as coming from Manuel’s cattle. The only other testimony on this point was that of Curtis Brown, an employee of the Louisiana Department of Agriculture, who testified that he could not identify the cattle in question as belonging to Arlington Manuel.
A blood sample which is found to be brucellosis reactive must be shown to have come from cattle owned by the person against whom an injunction is sought. Pearce v. Gunter, 221 So.2d 599 (La.App. 3 Cir. 1969); writ refused 254 La. 469, 223 So.2d 872; appeal after remand, 238 So.2d 534; writ not considered 256 La. 888, 239 So.2d 543.
In addition to the failure to identify the cattle as Manuel’s, the Board could not prove the test results by the Mississippi affidavits. The Board contends that its suit is one for a prelimiary injunction and that proof could be made by these affidavits, which the trial court ruled inadmissible.
The admissibility of the affidavits involves the question of whether the injunction sought is merely preliminary and within the purview of LSA-C.C.P. art. 3609 which provides that “(t)he court may hear an application for a preliminary injunction . . . upon the verified pleadings or supporting affidavits . . . ”
This court has not previously resolved the issue of whether, in suits for mandatory injunctions under LSA-R.S. 3:2221, proof may be by affidavits. See Pearce v. Johnson, 213 So.2d 117 (La.App. 3 Cir. 1968); writ denied, 252 La. 960, 215 So.2d 129.
In the instant case, the trial court concluded that the mandatory injunction sought by the Board was a permanent rather than preliminary injunction requiring proof by a preponderance of evidence. The affidavits are in the record as a proffer. The trial court stated;
“Well, I don’t see how there could be any other trial in this one. You know this is the merits. What else is there to try?”
Counsel for the Board answered:
“Well, there is never anything more to try in a mandatory injunction.” (TR. 93)
The mandatory injunction sought would require the penning and testing of defendant Manuel’s cattle and may result in their branding and slaughter. LSA-R.S. 3:2226 and 3 :2227. The granting of such a mandatory injunction requires affirmative action by an owner — perhaps very extensive in the instance of a large herd. The possible branding and slaughter, and the penalties, both civil and criminal, the latter prescribed in LSA-R.S. 3:2232, expose the owner to severe sanctions.
Thus, the mandatory injunction can hardly be equated with a preliminary injunction:
“Ordinarily, a preliminary injunction is a procedural device interlocutory in nature designed to preserve a status pend *351 ing final determination of an action.” Schwegmann Bros. G. S. Mkts. v. Louisiana Milk Com’n, 290 So.2d 312 at 316 (La., 1974).
We conclude that the injunction sought is not preliminary in nature and can not be tried on affidavits. The trial court properly refused to admit the affidavits into evidence.
We find no manifest error in the trial court’s dismissal of the Board’s suit.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs, insofar as allowed by law, are taxed against appellant.
AFFIRMED.
GUIDRY, J., dissents and assigns written reasons.

. A reconventional demand for damages was filed by Manuel against the Board but was not decided. The reconventional demand has apparently been abandoned as a result of the decision in Johnson v. Pearce, 313 So.2d 812 (La., 1975).