451 So.2d 1253 (1984)
Dennis I. OLBRYCH
v.
LOUISIANA STATE RACING COMMISSION.
No. CA-1581.
Court of Appeal of Louisiana, Fourth Circuit.
June 6, 1984.
*1254 Edward A. Armstrong, Jr., Jefferson, for plaintiff-appellant.
William J. Guste, Jr., Atty. Gen., Robert A. Barnett, Staff Atty., John E. Jackson, Jr., Asst. Atty. Gen., New Orleans, for defendant-appellee.
Before GULOTTA, BARRY and WILLIAMS, JJ.
BARRY, Judge.
A horse trainer appeals his three year suspension by the state Racing Commission.
Dennis Olbrych complains that the stewards failed to comply with the Louisiana Administrative Procedure Act (LAPA) LSA-R.S. 49:951 (et seq.), in particular Section 955. He also contends he did not receive timely notice in order to hire an expert to testify at the Stewards' or Commission's hearing.
Mr. Olbrych was the trainer of Kinda Flashy which finished second in the fourth race on October 7, 1982 at Delta Downs. The post-race urine analysis tested positive for prohibited drugs: Methyl Phendiate (Ritalin), Mephentermine, and DMSO Metabolite. The three Stewards held a hearing on October 14. Mr. Olbrych was present and advised of his right to counsel which he waived. He also waived his right to have a split sample run. Mr. Olbrych stated he did not know how the drugs got into his horse but knew he was responsible. On October 18 the Stewards ruled he violated LAC 11-6:53.18, 53.19 and 54 of the Rules of Racing,[1] suspended him, and redistributed *1255 the purse money. Mr. Olbrych did not appeal the ruling as allowed by R.S. 4:154(B); however, the Stewards referred the violation to the Racing Commission.
On October 26, 1982, Mrs. Olbrych signed for a certified letter addressed to her husband. The letter notified him of the Stewards' ruling, the date, time, and place of a hearing before the Commission, his right to counsel, the nature of the hearing, and the rules he allegedly violated.
The Commission met on November 4 and Mr. Olbrych appeared without counsel and was his only witness. He testified:
"I don't know how the stuff got into the horse. He was left alone for about 10 to 15 minutes before his race ... I don't know how it got there. That's the only thing I can say."
He admitted a prior suspension in 1980 due to another drugged horse and said:
"I didn't want to try to fight this because the lab showed it was there, and I don't have any way to prove that I didn't give it. But, surely, I wouldn't give Ritalin again, because I was here back in 1980 for it."
The Commission upheld the Stewards' ruling, ordered Mr. Olbrych suspended for three years, and denied him track privileges during the suspension. The Commission's decision was upheld by the district court.
LSA-R.S. 49:955 provides in pertinent part:
A. In an adjudication, all parties who do not waive their rights shall be afforded an opportunity for hearing after reasonable notice.
B. The notice shall include:
(1) A statement of the time, place, and nature of the hearing;
(2) A statement of the legal authority and jurisdiction under which the hearing is to be held;
(3) A reference to the particular sections of the statutes and rules involved;
(4) A short and plain statement of the matters asserted.
* * * * * *
C. Opportunity shall be afforded all parties to respond and present evidence on all issues of fact involved and argument on all issues of law and policy involved and to conduct such cross-examination as may be required for a full and true disclosure of the facts.
* * * * * *
The LAPA does not create a right to a hearing before any action can be taken. A "Section 955" hearing applies to an adjudication by a state agency. Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La. 1980). Section 951 of the Act defines the relevant terms:
(1) "Adjudication" means agency process for the formulation of a decision or order.
(2) "Agency" means each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, except the legislature or any branch, committee, or officer thereof, any political subdivision, as defined in Article VI, Section 44 of the Louisiana Constitution, and any board, commission, department, agency, officer, or other entity thereof, and the courts.
(3) "Decision" or "order" means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency, in any matter other than rulemaking, required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing, and including non-revenue licensing, when the grant, denial, or renewal of a license is required by constitution or statute to *1256 be preceded by notice and opportunity for hearing.
The stewards are not an agency as defined in the act because they do not "make[] rules, regulations, or policy, or formulate[] or issue[] decisions or orders ..." The suspension by the stewards was not a "decision" or "order" since it was not a "disposition ... required by constitution or statute to be determined on the record after notice and opportunity for an agency hearing ..."
The stewards' power to suspend is in R.S. 4:172(M) which provides:
The stewards may suspend for no greater period than the duration of the meeting plus ten days, or they may impose a fine not exceeding $200. All such suspensions and fines must be reported to the commission. If the punishment so imposed is not in the opinion of the stewards sufficient, they shall so report to the commission.
Since the disposition by the stewards does not result in a "decision" or "order", it is not an adjudication and Section 955 does not come into play. Delta Bank and Trust Co., supra; see also Louisiana Administrative Procedure Act, Robert Force and Lawrence Griffith, 42 La.L.Rev. 1227 (1982).
Section 961 C of the Act provides:
C. No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gives notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license. If the agency finds that public health, safety, or welfare imperatively requires emergency action, and incorporates a finding to that effect in its order, summary suspension of a license may be ordered pending proceedings for revocation or other action. These proceedings shall be promptly instituted and determined.
Section 961 C is also inapplicable to the Stewards.
However, the stewards must comply with the Commission's Rules of Racing:
6:53.17 When a report as described in Section 53.15 is received from the State chemist, the stewards shall conduct an investigation and a hearing. There shall be no ruling and the stable shall remain in good standing pending a ruling by the stewards. However, the horse allegedly to have been administered any such chemical substance or material shall not enter in a race during the investigation and hearing.
6:53.15 When a report is received from the State chemist reflecting in his expert opinion that the chemical analysis of blood, saliva, urine, or other samples taken from a horse indicate the presence of a forbidden narcotic, stimulant, depressant, or analgesic, local anesthetic or drugs of any description, not permitted by LAC 11-6:54, this shall be taken as prima facie evidence that such has been administered to the horse. Such shall also be taken as prima facie evidence that the owner, and/or trainer, and/or groom has been negligent in handling of the horse.
6:53.19 Should the chemical analysis of any sample of the blood, saliva, urine, or other excretions of body fluids of any horse so analyzed contain any narcotic, stimulant, depressant, local anesthetic, analgesic, or drugs of any description, not permitted by LAC 11-6.54, the trainer of the horse may, after a hearing of the stewards, be suspended or ruled off, if the stewards conclude that the drug contained in the sample could have produced analgesia in, stimulated, or depressed the horse, or could have masked or screened a drug, not permitted by LAC 11-6.54, that could have produced analgesia in, stimulated or depressed the horse. The stable foreman, groom, and any other person shown to have had the care or attendance of the horse may be suspended, or ruled off. The owner or owners of a horse so found to have received *1257 such administration shall be denied, or shall promptly return, any portion of the purse or sweepstakes and any trophy in such race, and the same shall be distributed as in the case of a disqualification.
Thus, a hearing is mandatory after a violation and before a suspension. Since the hearing involves a property right, i.e., the trainer's license, the alleged offender must receive adequate and timely notice, be advised the nature of the alleged offense, and the right to be present and represented. All of these basic rights were afforded to Mr. Olbrych.
By virtue of LSA-R.S. 4:154 the Racing Commission's "hearings, practice and procedure, and rule making procedure are as provided in the Administrative Procedure Act ..." The requirements of Sections 955 and 961 C were met by the Commission. Mr. Olbrych received timely, proper notice and had the opportunity to present evidence. He again waived his right to an attorney. It is clear that he made no effort to challenge the findings of the state chemist and admitted he had no defense to the charge.
According to Mr. Olbrych's application for his owner/trainer's license, he read and agreed to abide by the rules and regulations of the Racing Commission. LAC 11-6:53.15 says that a positive report from the state chemist is prima facie evidence that a drug had been administered to the horse and the trainer has been negligent. Mr. Olbrych presented nothing to rebut the evidence. The trainer is responsible and the absolute insurer of his horse's condition regardless of acts of third parties.
We are completely satisfied that Mr. Olbrych's rights were protected by the stewards and the Commission. This matter is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] 6:53.18 The trainer and/or assistant trainer shall be responsible for and be the absolute insurer of the condition of the horses he enters regardless of acts of third parties. Trainers and/or assistant trainers are presumed to know the rules of the Commission.

6:53.19 Should the chemical analysis of any sample of the blood, saliva, urine, or other excretions of body fluids of any horse so analyzed contain any narcotic, stimulant, depressant, local anesthetic, analgesic, or drugs of any description, not permitted by LAC 11-6:54, the trainer of the horse may, after a hearing of the stewards, be suspended or ruled off, if the stewards conclude that the drug contained in the sample could have produced analgesia in, stimulated, or depressed the horse, or could have masked or screened a drug, not permitted by LAC 11-6:54, that could have produced analgesia in, stimulated or depressed the horse. The stable foreman, groom, and any other person shown to have had the care or attendance of the horse may be suspended, or ruled off. The owner or owners of a horse so found to have received such administration shall be denied, or shall promptly return, any portion of the purse or sweepstakes and any trophy in such race, and the same shall be distributed as in the case of a disqualification.
6:54 lists permitted medications.