ARMSTRONG, Judge.
The Louisiana State Racing Commission (“Commission”) appeals a district court judgment granting Appellee’s petition for judicial review and remanding the case to the Commission for further proceedings.
Dr. Marland D. Dulaney, Appellee herein, is a licensed veterenarian who treated horses trained by Thomas J. Brumfield during the 1985 racing season at Jefferson Downs. On August 21, 1985, “Alien Nation”, a horse trained by Brumfield and treated by Dr. Dulaney, placed second in the tenth race. The State Steward notified Brumfield on or about August 28, that the lab had returned a positive drug report on a post-race urine sample taken from “Alien Nation”. The Steward subsequently told Brumfield that a hearing would be conducted on September 4th and that he was to bring his assistant trainer, Kenneth B. No-len, and Dr. Dulaney to the hearing.
Brumfield, Nolen and Dr. Dulaney “waived their rights” at the hearing. As of September 4, none of the men had requested a split-sample of the urine for testing by an independent lab. They were informed at the hearing that “Alien Nation” had tested positive for both Banamine and Lidocane. Dr. Dulaney admitted to the Stewards that he may have inadvertently administered Banamine to “Alien Nation” on the morning of the race but he vehemently denied ever using Lidocane on any horse, including “Alien Nation”.
As a result of information gained at the hearing, the Stewards disqualified “Alien Nation” from second place and placed her last. They also found Brumfield, Nolen and Dr. Dulaney to be in violation of the Rules of Racing and each was suspended for the balance of the meet plus ten days.[1] *509 The Stewards found the punishment insufficient and referred the case to the Commission. The men were granted suspen-sive appeals.
On September 9, 1985 Dr. Dulaney requested that the split sample urine specimen allegedly taken from “Alien Nation” be made available to him for independent testing. He was informed by the Commission on September 13, that the sample had been destroyed.
The Commission conducted a full hearing relative to the “Alien Nation” case on January 30, 1986, at which the State Steward, the chemist who performed the drug screen, trainer Brumfield, assistant trainer Nolen and Dr. Dulaney testified. Dr. Dula-ney was afforded full-cross-examination rights. The Commission upheld the prior rulings of the Stewards and in addition fined Dr. Dulaney $2500.00. He then sought judicial review in the district court.
On January 29, 1987 the district court remanded the case to the Commission “for further proceedings and the taking of competent evidence”. The court held that the failure of the Commission to prove by competent legal evidence that the urine sample in question was taken from “Alien Nation”, and the failure to produce the split of the urine sample was a denial of due process. The court also concluded that Dr. Dulaney was improperly denied reasonable examination, cross-examination and the right to make a meaningful record since the record of the Steward’s hearing, along with other reports, had been introduced in globo without any foundational testimony.
The Commission appeals, assigning as error each of the holdings of the district court. We limit our discussion to the due process issue and find the violations enumerated herein provide a sufficient basis for a remand.
The record before us establishes that Brumfield had three horses in his bam which were being treated by Dr. Dulaney prior to the August 21 race. All of the horses were fillies, had similar markings and lacked identifying tatoos. All three horses, including “Alien Nation” had been given an injection of Banamine the day before the race. Two of the three horses were ill and not scheduled to race. “Alien Nation” had not been reported ill and was scheduled to race on the evening of August 21. On the morning of the race Dr. Dula-ney was instructed by Nolen to treat the two ailing horses. When Dr. Dulaney arrived at the bam later that morning he found the horses unattended but nonetheless proceeded to treat the two horses that he thought required medication. He identified the horses by stall number. He later testified that he did not treat the horse occupying “Alien Nation’s” stall. Other testimony suggested that the horses may have been temporarily moved from stall to stall prior to Dr. Dulaney’s visit in order to use a “freeze machine” on one of the horses’ sore legs. This explanation of how “Alien Nation” may have been medicated instead of one of the sick horses was not, however, substantiated to any degree of certainty by the evidence presented.
At the January 30, 1986 hearing the Commission chairman informed Dr. Dula-ney that the split-sample was not made available to him because the Rules of Racing specify that the split-sample must be requested within five days of notification of the trainer by the Stewards and that only a trainer can make such a request.[2]
*510 By statute and under Commission rules, a trainer is an absolute insurer of the condition of his horse, and if a prohibited substance is found present in a horse, there is a prima facie case that the trainer was negligent. La.R.S. 4:150(A); LAC 35:1735, (Old: LAC 11-6:53.18). Laborde v. Louisiana State Racing Commission, 506 So.2d 634 (La.App. 4th Cir.1987). Because of the scope of the “absolute insurer” rule cited above, trainers are permitted access to the allegedly positive split-sample if the request is made within the designated time frame. No such provisions are made for veterinarians, nor are they considered “absolute insurers” of the horses they treat. Nonetheless, a veterinarian found in violation of the Rules of Racing relative to the administration of prohibited drugs or substances is subject to sanctions just as severe as those meted out to trainers, i.e., suspension from the track, fine, and/or suspension of license. LAC 46:105 (Old LAC 11-6:13:8). This court has held that where the property rights of a trainer are affected by the proceedings of the Commission, basic due process requirements must be satisfied. Olbrych v. Louisiana State Racing Commission, 451 So.2d 1253 (La.App. 4th Cir.1984); Hall v. Louisiana State Racing Commission, 505 So.2d 744 (La.App. 4th Cir.1987). We find this fundamental concept to be equally applicable to a veterinarian under the facts of this case.
Under LAC 35:1729 (Old LAC 11-6:53.15) a state chemist’s report of prohibited drugs found in a horse’s blood or urine is taken as prima facie evidence that such has been administered to the animal. However, LAC 35:1731 (Old LAC 11-6:53.16) states that an owner, and/or trainer, and/or groom or any other person shall be permitted to interpose reasonable and legitimate defenses before the Commission in response to the chemist’s report.
In the case before us, the destruction of the split-sample following the Steward’s hearing denied Dr. Dulaney an opportunity to fully develop his defense before the Commission. Once Dr. Dulaney learned of the presence of both Banamine and Lido-cane in the tested sample it became imperative to determine if the sample had in fact been taken from “Alien Nation”. Once that determination had been made, testing by an independent lab may have produced results different from those submitted by the state chemist. For example, a strong concentration of the prohibited drugs may have supported an argument that they were administered immediately before or after the race. A very weak concentration would indicate the possibility that the drugs were legally administered more than 24 hours before the race. Either finding would be supportive of the conclusion that the drugs were not administered by Dr. Dulaney on the morning of the race.
In the instant case, there was no attempt by the Commission to verify that the coded sample tested by the state lab was in fact a sample taken from “Alien Nation.” The Steward simply reviewed general procedures followed by the testing bam personnel. LAC 35:1757 (Old LAC: 6-11:53.29) mandates that the owner, trainer, or their designated stable representative shall be present and witness the taking of such specimens and shall so signify in writing. There is no indication that any representative from Brumfield’s stable was present at the collection of the sample from “Alien Nation”. In Hall, supra, at 747, this court held that a person accused of violating the Rules of Racing should have an opportunity to examine the only evidence used against him. Where an adverse party is not able to inquire into the very basis of that evidence, both substantive and procedural due process is violated.
Unlike the plaintiff in Hall, Dr. Dulaney was able to cross-examine the chemist and to ascertain the drug concentration levels reported in the tested sample. He was not, however, able to verify that the sample did in fact come from “Alien Nation” nor was he able to test the sample by an independent lab. Where drug screen results are the only evidence used to substantiate alleged violations of the Rules of Racing, and where the test sample is unavailable to the accused, minimum due process standards demand that the identity of the sample be verified. See Pearce v. Gunter, 238 So.2d 534 (La.App. 3rd Cir.), *511 writ refused 256 La. 888, 239 So.2d 543 (La.1970); Swanson v. Estate of Augusta, 403 So.2d 118 (La.App. 4th Cir.1981); Lapoint v. Breaux, 395 So.2d 1377 (La.App. 1st Cir.), writ refused 399 So.2d 611 (La.1981). Accordingly, we affirm the district court’s remand of this case for further proceedings and the taking of competent evidence.
Affirmed.

. Dr. Dulaney was found in violation of LAC 46:105; (Old 11-6:13.8):
§ 105. Administration of Drugs; Hearing
All veterinarians administering drugs or other substances to horses regulated by the commission, shall be responsible to see that the drugs or other substances are administered in accordance with the provisions of the rules of racing. Should any specimen sample disclose the presence of any drug or substance prohibited by the rules of racing, the stewards or the commission may hold a hearing to determine whether the prohibited drug or substance was received by or administered to the horse in question by any veterinarian in violation of the rules of racing. If it is deter *509 mined that a violation occurred, the stewards or commission will apply such sanctions, by fine and/or suspension of license, as is deemed appropriate.

. LAC 35:1775 (Old LAC 11-6:53.37.1) states in part:
Within five days from the date the stewards notify a trainer that the initial laboratory test on a urine or blood specimen from a horse entered and raced by him was positive for the presence of a prohibited drug or substance, the trainer must request the stewards to have the split or referee sample tested by an alternate laboratory as provided herein. At the time of his request the trainer must deposit the sum of $300 with the stewards to cover all expenses to be incurred in testing the split or referee sample. The stewards shall forward the $300 deposit to the state chemical testing laboratory. Failure of a trainer to make a timely request to the stewards constitutes a waiver of any and all rights to have the split or referee sample tested.