395 So.2d 1377 (1981)
Calvin LAPOINT et al.
v.
Phillip P. BREAUX et al.
Elmer E. HOWARD et al.
v.
Phillip P. BREAUX et al.
Nos. 13902, 13903.
Court of Appeal of Louisiana, First Circuit.
March 2, 1981.
Rehearing Denied April 13, 1981.
Writ Refused April 27, 1981.
*1378 Kim P. Stansbury, Lippman, Mahfouz & Martin, Morgan City, for Elmer E. Howard.
Charles B. Plattsmier, William D. Hunter, Ltd., Morgan City for Calvin Lapoint.
David M. Kaufman, Roy & Forrest, New Iberia, and A. D. Barnes, Jr., Cucullu & Barnes, New Orleans, for Howard Trucking Co. and Automobile Ins. Co.
Nan M. Landry, Landry, Watkins & Bonin, New Iberia, for Dairyland Ins. Co.
Before ELLIS, COLE and WATKINS, JJ.
ELLIS, Judge:
These two consolidated cases arise out of an accident between an automobile operated by Keith Howard, in which Glen Lapoint was a guest passenger, and a truck-trailer rig owned and operated by Phillip P. Breaux, and leased to Howard Trucking Company. In the accident both Howard and Lapoint were killed. Suits were filed for their wrongful death by their surviving parents, with Breaux, Howard Trucking Company, and Automobile Insurance Company, their insurer, as defendants. Dairyland Insurance Company, Howard's insurer, was named as an additional defendant in the Lapoint case.
Trial on the merits was held before a jury, which rendered a verdict finding that *1379 both Breaux and Howard were negligent and that Lapoint had assumed the risk of injury. Pursuant to those findings and a holding by the trial judge that the doctrine of last clear chance could not be invoked by plaintiffs, judgments were rendered dismissing both suits, and plaintiffs have appealed.
The collision occurred just after midnight, on U.S. Highway 90 in Morgan City, Louisiana. At the point of the accident, Highway 90 is a four-lane, undivided highway, running east and west, the lanes each being 11 feet nine inches in width. About 135 feet west of the point of the accident is the intersection of Highway 90 and East Boulevard, which is controlled by a stoplight.
Mr. Breaux was driving a pickup truck-gooseneck trailer rig about 51 feet long. He and another driver, who had a similar rig, were parked in a lot east of the intersection on the south side of Highway 90. They were planning to head west on Highway 90 from that place. The other driver left the lot first and negotiated a left turn into the outside westbound lane of the highway and pulled up to the stoplight, which was red for traffic on the highway. Mr. Breaux came out of the lot right behind the first truck. He testified that he looked to the left, and saw a car approaching from the west, a good distance away, and noticed that the light was red for traffic on Highway 90. He looked to his right and saw a car approaching from the east nearer than the other car, but still far enough away for him, in his opinion, to enter the highway safely. He then pulled out across the highway, and, when the trailer was completely blocking the eastbound or southerly two lanes of the highway, he saw the Howard car as it approached the trailer, just before the collision.
The point of impact was probably in the outside eastbound lane, about 135 feet west of the center of the intersection of East Boulevard and Highway 90. The testimony indicates that the light turned green for traffic on Highway 90 shortly after Mr. Breaux pulled out, and before the Howard car reached the intersection. Mr. Breaux and his companion driver both testified that the Howard car was being driven at a high rate of speed. Two eyewitnesses, who worked at a filling station at the northeast corner of the intersection, testified that they estimated the speed of the Howard vehicle at about 45 miles per hour. An expert accident reconstruction expert testified that the speed of the Howard vehicle was about 47 miles per hour at the time of the impact. There is nothing to indicate that Howard applied his brakes before the accident.
The sidelights on the trailer were found by investigating officers to be in accordance with the law, which requires that they be visible from a distance of 500 feet. R.S. 32:311. Other evidence in the record indicates that the area in which the accident happened was fairly well lit because of street lighting, and the lights on commercial establishments in the vicinity.
The accident reconstruction expert testified that it would have taken the truck-trailer rig about four seconds from the time it pulled out to reach the position it occupied at the instant of the collision. He also testified that the perception-reaction time for a driver on the highway would vary from one and one-half to four seconds, depending on the conditions. The trial judge sustained an objection to the question when the expert was asked what the perception-reaction time would have been under the circumstances existing at the time of the accident. The jury, therefore, was not aware that the expert's opinion was that the perception-reaction time that night would have been four seconds. Since this type of testimony lies within the area of expertise of the accident reconstruction expert, the testimony should have been admitted.
Based on the foregoing facts, and not considering the question of Keith Howard's *1380 intoxication, which is a major defense contention, we find that the jury correctly found negligence on his part. Assuming that the Howard vehicle was going 45 miles per hour, and that it took the truck-trailer rig four seconds to reach its position at the time of the collision, the Howard vehicle was over 250 feet away when the truck began to pull out. At this distance, which is less than a block, Howard should have been able to see the truck and trailer, which were fully and legally lighted, and which were in a fairly well lighted area. Even if he did not see the rig until he passed under the stoplight, there was still time to slow his vehicle, and room to pass to the rear of the trailer on the shoulder. We are not impressed with the opinion of the accident reconstruction expert that the perception-reaction time was four seconds, under the conditions at the time of the accident. Drivers on highways are obligated by law to keep a proper lookout and to see what is there to be seen. Keith Howard evidently failed in this duty, since he never applied his brakes. We think the jury properly found him to be guilty of negligence which was a cause of the accident.
We further find that the record supports the verdict of the jury that Breaux was guilty of negligence which was a cause of the accident. He pulled out into the highway at a time when it was not safe to do so, as is evidenced by the occurrence of the accident.
Defendants seek to defend against Glen Lapoint on the theory that he assumed the risk of the accident. They contend that Keith Howard was intoxicated, that his condition was obvious, and that, by riding with Howard in the car, Lapoint assumed the risk of any accident substantially caused by Howard's intoxication. If this be true, Lapoint would be precluded from recovery, from Howard or from any third party whose negligence was a contributory cause of the accident. Prestenbach v. Sentry Ins. Co., 340 So.2d 1331 (La.1976); Viator v. Grain Dealers Mutual Insurance Company, 182 So.2d 165 (La.App. 3rd Cir. 1966).
The principal evidence as to Howard's intoxication is the results of two tests made of his blood after the accident. This evidence was objected to by plaintiffs on the ground that the chain of possession of the blood samples, between the time they were drawn and the time the tests were made, was not sufficiently proven. In Pearce v. Gunter, 238 So.2d 534 (La.App. 3rd Cir. 1970), the court said:
"It is fundamental in the law of evidence that an article or substance which is introduced as demonstrative evidence, or as to which a witness is asked to testify, must be sufficiently identified as the one involved in the occurrence in question.... The foundation must connect the specimen with its source, show that it was properly taken by an authorized person, properly labeled and preserved, properly transported for analysis, and properly tested."
In this case, it is shown that the blood samples were drawn by the coroner who conducted the autopsy. He testified that he usually labelled the samples himself, but that in some cases they would be labelled by his assistant. He had no independent recollection of who labelled the samples in this case. One of the samples was forwarded by mail to the State Crime Lab in New Iberia. There is no evidence as to who mailed the sample or how it was received. The person who actually conducted the test was deceased and unable to testify. His supervisor, who reviewed his work, did testify as to the results of the test. We find that this chain of circumstances was not sufficient to satisfy the requirements of law for admissibility of the test results, and the results of the test should have been excluded.
The evidence shows that the other sample was picked up by a man from the Medical Pathology Laboratories, Inc., and by him delivered to that laboratory, where it was immediately tested. The man who picked up and delivered the blood sample *1381 did not testify nor did the person who delivered the sample to him. The person who actually performed the test testified as to how samples were customarily picked up and delivered, as to how the test was conducted, and the results thereof. There is, therefore, nothing but the label on the sample to connect the testimony of the coroner and that of the person conducting the test. We find that this chain of circumstances does not satisfy the requirements of the law, and the evidence as to the result of the second test should have been excluded.
The clear preponderance of the other evidence bearing on Howard's intoxication is to the effect that he showed no signs of intoxication when he drove off with Lapoint shortly before the accident.
Under those circumstances, Lapoint did not assume the risk of the accident which occurred, and is entitled to recover, in solido, from both of the parties whose negligence caused the accident.
The records show that Glen Lapoint was 18 years of age, lived with his parents and held a full-time job. He contributed to his parents' support. Dr. Seymour J. Goodman, professor of economics, Graduate School of Business Administration, Tulane University, was accepted as an expert witness in the field of economics. He testified that the current median age for first marriage for males in the United States was 22.9 years. Based on this figure he used a five year period to calculate the loss of future income to Lapoint's parents. Assuming that Lapoint would use some of his earnings for his own benefit, Dr. Goodman testified that the present value of the net loss of support to the parents would be approximately $30,000.00. We, therefore, find that the parents of Lapoint, Calvin Lapoint and his wife, are entitled to loss of support from their son, Glen Lapoint, in the sum of $30,000.00.
The parents of Glen Lapoint, Mr. and Mrs. Calvin Lapoint, were very fond of their child, and his loss was a great blow to them. We, therefore, find that each parent is entitled to an award of $50,000.00 for loss of companionship, love, and affection. See Walker v. St. Paul Ins. Companies, 343 So.2d 251 (La.App. 1st Cir. 1977); Williams v. State Farm Mut. Auto. Ins. Co., 349 So.2d 1275 (La.App. 1st Cir. 1977); Youngblood v. Oil Well Chemical Co. of La., 352 So.2d 316 (La.App. 4th Cir. 1977).
Glen Lapoint survived the accident by several hours. The evidence shows that he was unconscious during this period but that he uttered a deep moan when he was moved. We award the parents of Glen Lapoint, Mr. and Mrs. Calvin Lapoint, together, the sum of $2,000.00 for his pain and suffering.
Accordingly, the judgment of the trial court is reversed and judgment is rendered in favor of Calvin Lapoint in the sum of $66,000.00, and in favor of Eula Mae Lapoint, wife of Calvin Lapoint, in the sum of $66,000.00, against Phillip P. Breaux, Howard Trucking Co., Inc., Automobile Insurance Co., and Dairyland Insurance Company, in solido. The liability of Dairyland Insurance Company is subject to the $5,000.00 limit of liability in its policy. All costs shall be paid by defendants.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.
WATKINS, Judge, dissenting.
I dissent from that part of the holding of the majority that finds Howard was contributorily negligent, and hence holds his survivors cannot recover.
The majority holds that the blood tests used to indicate possible intoxication on the part of Howard were inadmissible. As the jury was in all probability strongly influenced by the results of the blood tests, and as these were material to the issue of Howard's negligence, we must assume that the majority opinion was written as if this Court was the initial trier of fact. The majority opinion is postulated upon Howard's sobriety, and is founded upon negligence *1382 of another type, failure to stop or even to apply the brakes when approaching a truck 4 seconds away.
The Breaux vehicle in entering the highway from the parking lot had to traverse the eastbound lanes in making its left turn into the westbound lanes. Breaux, therefore, was making a left turn. Whether the approaching vehicle is coming at a 180 deg. angle or a 90 deg. angle is totally irrelevant; the danger of negotiating a left turn across a lane of travel occupied by an oncoming vehicle is equally great. The jurisprudence of this state is replete with holdings that one negotiating a left turn and crossing another vehicle's lane of travel has a very high standard of care imposed upon him, and that the burden is on the person negotiating a left turn to show that he exercised that degree of care. The reason for the strict duty is the obvious danger to the oncoming vehicle whose lane of travel is being traversed. Bennett v. United States Fidelity & Guaranty Co., 373 So.2d 1362, writ den. 376 So.2d 1269 (1979), is clearly in point. In that case, defendant made a left turn in the face of plaintiff's car. Plaintiff in that case may or may not have been intoxicated at the time of the accident, but was clearly speeding at the time the accident occurred. We held that the burden was on the defendant who was making a left turn to show that the accident could have been avoided had plaintiff been going within the posted speed limit or if plaintiff had not consumed alcohol.
In the present case defendants failed to produce a single witness who could testify that Howard could have avoided the accident, although the burden was undoubtedly upon them to do so. The evidence preponderates quite clearly to the contrary. The only expert called to testify was Mr. Sylvanous Walker, whose testimony, if admitted, would have indicated that Howard's perception reaction time was four seconds, the exact time-distance the Breaux truck was in front of Howard when it first entered Howard's lanes of travel on the highway. Mr. Walker's testimony, therefore, establishes the fact that the perception reaction time of Howard under existing conditions was approximately four seconds, and the clear weight of the evidence that it took Breaux approximately four seconds to arrive at the point of impact from the time he entered the highway, lead to the inescapable conclusion that Howard did not have time to avoid colliding with Breaux's vehicle which was blocking the two eastbound lanes of travel at the time of impact.
I agree with the majority that Lapoint did not assume the risk, as absent the blood test results, there was no substantial evidence that Howard was intoxicated.
I respectfully dissent.