423 So.2d 724 (1982)
Paul C. RAYMOND, III and Shannon Elaine Raymond Through Judith Randolph RAYMOND, Tutrix
v.
James F. DEATON, and ABC Insurance Company
AMERICAN FIRE & INDEMNITY COMPANY
v.
James F. DEATON, Southeastern Fidelity Insurance Company of Atlanta, Ga., and Sanderson Farms, Inc.
Nos. 82 CA 0155, 82 CA 0156.
Court of Appeal of Louisiana, First Circuit.
November 16, 1982.
*725 William J. Wegmann, Jr., James H. Drury, New Orleans, for American Fire & Indem. Co.
Rodney Cashe, Curtis Baham, Jr., Hammond, for Paul Raymond, III, et al.
Claude D. Vasser, Metairie, for Sanderson Farms.
Richard B. Nevils, Baton Rouge, for Southeastern Fidelity Ins. Co. and James F. Deaton.
Before EDWARDS, WATKINS and SHORTESS, JJ.
WATKINS, Judge.
This suit was instituted by Judith Raymond in her sole capacity as natural tutrix on behalf of her two minor children to recover for the wrongful death of their father, Paul Raymond, Jr., who died from injuries sustained in a collision with a large *726 semi-trailer truck driven by James Deaton. The plaintiff filed suit against James Deaton, the truck driver; Southeastern Fidelity Insurance Company, the truck driver's liability insurance carrier, and American Fire and Indemnity Company, the decedent's insurance company, under the uninsured and underinsured motorist clause of the decedent's policy. Deaton was insured by Southeastern to the extent of $100,000.00 and Raymond held insurance from American for underinsured motorist coverage to the extent of $50,000.00.[1]
Consolidated with this case is a suit brought by American Fire and Indemnity Insurance Company as subrogee to the plaintiff's right against the defendants Southeastern Insurance Company and James Deaton to recover $6,400.00. This amount represents the value of the decedent's car, paid by American Fire and Indemnity Company to the plaintiff under the insurance policy in effect between American and the decedent. American is in a rather contradictory position because it was in American's interest to show that Deaton was negligent so that it could recover the sum of $6,400.00 that it had paid to the heirs of Paul Raymond, but on the other hand it was in American's interest to show that Deaton was not negligent so that American would not be liable under the underinsured motorist clause for an award in excess of $100,000.00. By stipulation the parties agreed that in the event of a judgment in favor of the plaintiffs there should also be judgment in favor of American in the sum of $6,400.00 against the same defendant, in solido.
After trial by jury, a verdict was returned in favor of the plaintiff in her representative capacity for and on behalf of the minor children, awarding general damages to each child in the principal sum of $25,000.00, and further awarding each child $41,600.00 for loss of support and services flowing from the wrongful death of their father, or a total of $66,600.00 for each child.
In accordance with the verdict of the jury the trial court rendered judgment in favor of the plaintiff and against Deaton and Southeastern in solido in the principal sum of $133,200.00. American was permitted to recover the sum of $6,400.00 from Southeastern and Deaton. Further, American was held liable to the plaintiff in the amount of $33,200.00 under its underinsured motorists policy. This sum represents the amount of the award in excess of the $100,000.00 limit of the liability insurance policy in effect between Southeastern and Deaton.
Southeastern, American and Deaton appeal the finding of negligence and the failure to find contributory negligence. Southeastern and Deaton also appeal the trial judge's assessment of jury costs for the whole week of November 9, 1981 through November 14, 1981. They assert that the case did not commence until November 10, 1981, and was recessed the entire day of November 13, 1981. The plaintiff filed a separate appeal alleging that the jury abused its discretion in awarding an amount inadequate to compensate the children for the loss of their father. We amend and affirm.
The accident resulting in the death of Paul Raymond, Jr. and giving rise to this action occurred on February 2, 1980 around 12:00 midnight, when vehicles driven by Paul Raymond and James Deaton collided. Paul Raymond was an employee of the First Guaranty Bank in Hammond, Louisiana. He had two children, a son, Paul Raymond, III, who was born of his marriage to Judith Raymond, and a daughter of Mrs. Raymond's previous marriage, Shannon Raymond, whom he had legally adopted. At the time of the accident Paul Raymond and his wife Judith were divorced. Judith Raymond had been awarded permanent *727 custody of the children. On the evening of the accident Paul Raymond had stopped to have drinks and dinner after work. Shortly after 12:00 midnight he left for home driving west on Highway 190. Deaton, a self-employed truck driver, was hauling a load of frozen chickens from Hazelhurst, Mississippi to Sanderson Farms in Hammond, Louisiana. Deaton was driving a large semi-trailer truck, commonly referred to as an "18 wheeler", and had been traveling on Highway 51, as he approached its intersection with Highway 190. As Deaton entered the intersection he crossed over the east bound lanes of Highway 190, and stopped to look for oncoming traffic. He then turned left onto Highway 190 and pulled into the inside west bound lane of the highway. Shortly after Mr. Deaton pulled onto the highway the collision occurred, the right rear corner of Deaton's truck making contact with the left front corner of the Raymond vehicle. Mr. Raymond was taken to Lallie Kemp Charity Hospital, where he died approximately two hours later from injuries sustained in the collision.
The plaintiff alleges the collision occurred in the outside lane when the 18 wheeler truck cut into the path of the Raymond vehicle and collided with the car. The defendants contend that instead Mr. Raymond had been drinking, consequently his driving ability was impaired and he ran into the rear of the 18 wheeler while it was in the inside lane. The defendants assert contributory negligence as a defense.
The jury found that the negligence of the defendant truck driver was the sole cause of the accident.
On appeal the defendants assert first that the jury erred in finding negligence on the part of James Deaton, and second that the jury erred in failing to find contributory negligence on the part of Paul Raymond.
The record indicates that the jury had evidence before it furnishing a reasonable factual basis for its finding of negligence on the part of James Deaton. It is clear from the record that the truck entered the highway, turning left into the inside lane as the decedent was lawfully proceeding in the same direction in the outside lane. Both the officer who investigated the accident and the plaintiff's expert witness in accident reconstruction testified that the point of impact was several feet into the outside lane. Even the defendant's own accident reconstruction expert conceded that the point of impact may have been on the center line, between the inside and outside lanes of travel.
The testimony and the record proponderate in favor of the fact that the back of the defendant's truck was across the centerline and into the outside lane when it hit the Raymond car. Therefore we conclude that the defendant truck driver was changing lanes when he collided with the decedent's car. This situation is governed by the rule that where a roadway has been divided into two or more traffic lanes:
"A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." LSA-R.S. 32:79(1)
Under this statute a motorist who attempts to change lanes on a multiple-lane highway must ascertain before turning that the maneuver can be made safely without endangering normal overtaking or oncoming traffic. Jefferson v. Strickland, 242 So.2d 582 (La.App. 1st Cir.1970); Trabeaux v. Sanchez, 279 So.2d 793 (La.App. 4th Cir. 1973).
Before a plaintiff can recover for the defendant's negligence, the defendant's act must have been a cause in fact of the harm that occurred; the defendant must have owed a duty to the plaintiff, the duty must have been breached, and the risk and harm encountered by the plaintiff must have fallen within the scope of protection afforded by the duty which was breached. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
The defendant was under a duty recognized by law requiring him to keep his *728 vehicle within his lane of travel and not to move from that lane until he had first ascertained that such a move could be made with safety. The defendant breached this duty and negligently entered the decedent's lane of traffic, which negligence was a cause in fact of the accident. Clearly the risk and harm encountered by the plaintiff fall within the scope of protection of the statute. The objective of the statutory provision violated in the case at hand was obviously to protect against the possibility that a motorist travelling on a multi-lane highway would enter the adjacent lane without due regard for vehicles already lawfully travelling in that lane. The law was designed to protect the plaintiff and any member of his class against the kind of accident that occurred in this case. The elements necessary for recovery being present, we find the plaintiff is entitled to an award for the wrongful death of Paul Raymond.
The defendants have cited several cases to support their contention that the operator of a following vehicle must follow at a safe distance, and if a rear-end collision occurs, the driver of the following vehicle is presumed to be prima facie negligent. Although this is a valid principle of law, it is inapplicable to the case at hand. The rule as stated in LSA-R.S. 32:81 was intended to cover the situation where the vehicle has been lawfully proceeding within the same lane as the following vehicle and a rear-end collision occurs as a result of the following motorist's failure to maintain a safe distance or to keep a proper lookout as required by statute.
The presumption of negligence for following too close is not available to the driver of a vehicle which changes lanes into the path of another vehicle travelling such a short distance behind in the other lane that it is impossible for that vehicle to stop or avoid the collision. Raymond was either parallel with the truck so that the front end of his automobile was even with the rear end of the truck or he was following at such a short distance in the right lane when Deaton commenced driving into that lane that Raymond was unable to avoid the accident. In either case, the fault was Deaton's, not Raymond's, and the presumption referred to is without application to the facts of the present case.
The defendants also alleged that Mr. Raymond was drinking and that he may have been speeding. Both of these allegations remain unsupported by the evidence. The defendant who relies on contributory negligence as a defense bears the burden of proving negligence of the plaintiff and that such negligence was a contributory cause. Tucker v. Lirette, 400 So.2d 647 (La.1981); McElroy v. Vest, 407 So.2d 25 (La.App. 3d Cir.1981), writ denied 412 So.2d 83 (La.1982). During the course of that evening, the decedent had consumed three drinks, possibly four, along with a full course meal. The defendants have failed to show any causal relationship between the decedent's consumption of the drinks and the accident. The defendants have failed to introduce any evidence tending to show that Mr. Raymond was intoxicated or even that his driving ability was impaired. Furthermore, we are satisfied that the decedent was not speeding, as the defendants further contended. Based on the testimony of the police officers who investigated the accident and the plaintiff's expert witness, we are convinced that Mr. Raymond was traveling at an approximate speed of 50 mph in a 55 mph zone.
Thus, a review of the trial record shows the jury did not abuse its discretion in finding the defendant liable, nor in failing to find contributory negligence on the part of the plaintiff's decedent. Great weight must be given the jury's resolution of conflicting testimony on an issue of fact, especially where the credibility of witnesses is involved. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Erdey v. Steib, 392 So.2d 131 (La.App. 1st Cir.1980). Reasonable factual conclusions of the trier of fact should not be disturbed in the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
Through the appeal taken on behalf of her minor children, the plaintiff seeks to *729 have the award increased, alleging that the jury abused its discretion in awarding an amount inadequate to compensate the children for the loss of their father.
Awards for damages lie within the "much discretion of the trier of fact and are not to be disturbed on appeal unless there is a manifest abuse of the discretion." Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Twenty-five thousand dollars ($25,000.00) to each of the children for the loss of love and affection of their father is on the low side, but we cannot say that it is so low as to constitute an abuse of discretion.
Looking to awards in similar cases, we find that an award of $40,000.00 to each child for general damages has been upheld as fair. Faulk v. Schlumberger Well Services, 412 So.2d 162 (La.App. 3d Cir.1982).
In LeJeune v. Allstate Ins. Co., 373 So.2d 212 (La.App. 3d Cir.1979), the court awarded $12,500.00 to a nine year old son for the loss of love and affection of his father. On appeal the court found the award to be inadequate and increased the award to $30,000.00 because of the happy close knit family relationship that existed prior to the father's death.
In another wrongful death action, an award of $7,500.00 to the decedent's wife for loss of love and affection was held to be adequate. Davis v. Owen, 368 So.2d 1052 (La.1979).
We recognize the principle that awards in similar cases of this nature do not provide a scale of uniform awards in cases involving comparable injuries. Such awards serve only as aids in determining whether a particular award is so greatly disproportionate to awards for similar injuries that a manifest abuse of discretion is evident. Temple v. Liberty Mutual Insurance Co., 336 So.2d 299 (La.App. 1st Cir.1976), writ refused 339 So.2d 23 (La.1976).
An award of $25,000.00 is not so greatly disproportionate as to other awards for wrongful death that a manifest abuse of discretion is evident. We find that the jury was within the scope of discretion accorded by law and therefore we affirm the amount awarded by the jury.
It is our opinion, however, that the jury did abuse its discretion in awarding equal overall amounts to both of the children for loss of support. The awards should take into consideration that the periods of dependency for each child will vary because of the varying ages. Fault v. Schlumberger, supra. At the time of the death of their father, Paul Raymond III was 6, Shannon Raymond was 8. Paul would have reached the age of majority in approximately 12 years, Shannon in approximately 10 years. These years represent the years of dependency and total 22 years. A fair allocation of $83,200.00 between the children may be made by fixing the awards on a proportional basis of 12/22-10/22. Accordingly, we distribute the awards to the children for loss of support as follows:

Paul Raymond III $45,381.82
Shannon Raymond $37,818.18

Finally, Southeastern has appealed the assessment of jury costs. We find that the trial judge erred in assessing costs for the entire week of November 9, 1981 through November 14, 1981. The case did not commence until November 10, 1981 and was recessed the entire day of November 13, 1981. "The jurors who attend may demand and receive from the parish treasury twelve dollars for each day of attendance in court...." LSA-R.S. 13:3049(B). The jurors were in attendance November 10, 11, 12 and 14, 1981. Therefore, the judgment should be amended to reduce the jury costs accordingly.
We note the trial court rendered judgment in favor of the plaintiff and against Deaton and Southeastern, binding Deaton and Southeastern in solido in the principal sum of $133,200.00. The trial court erred in so doing, for the liability insurance policy in effect between Southeastern and Deaton was limited to $100,000.00 per occurrence. Southeastern can only be held liable to the extent of its liability insurance policy coverage, or $100,000.00.
*730 For the foregoing reasons it is hereby ordered, adjudged and decreed that the defendant James Deaton is liable to the plaintiff in the amount of $133,200.00. Southeastern is liable in solido with James Deaton to the extent of $100,000.00. American is liable to the plaintiff in the amount of $33,200.00. Further, American is allowed to recover $6,400.00 from Southeastern and Deaton.
Defendants are assessed with all costs, as amended.
AMENDED AND AFFIRMED.
NOTES
[1] Sanderson Farms was also made a defendant. The plaintiff alleged that an employer-employee relationship existed between Sanderson Farms and James Deaton, that Deaton was acting within the scope of his employment and therefore Sanderson Farms should be held vicariously liable for the acts of James Deaton. However, no employer-employee relationship could be established between Sanderson Farms and Deaton, and on the plaintiff's motion Sanderson Farms was dismissed. The dismissal is not an issue in this appeal.