442 So.2d 548 (1983)
Bennett RAYFORD and Rosalee Rayford
v.
SAIA MOTOR FREIGHT LINES, INC., Transport Insurance Company and Clavon J. Smith, Jr.
No. 83 CA 0091.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*549 John S. Thibaut, Jr., Baton Rouge, for plaintiffs-appellants.
James Moore, Baton Rouge, for defendants-appellees.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
The major issue in this wrongful death and survival action is whether or not defendant Clavon J. Smith, Jr.[1] was at fault in causing plaintiffs' son's injuries and death.
These facts gave rise to the litigation: On October 24, 1980, Clavon Smith was driving a tractor-trailer rig for his employer, Saia Motor Freight Lines, Inc. (Saia). At about 3:30 A.M. he was proceeding north on La. Hwy. 61, in West Feliciana parish, near Laurel Hill, Louisiana. Mr. Smith was following another tractor-trailer rig, being driven by Marvin McCon. Smith estimated his speed at 25 to 30 miles per hour, while McCon testified the two trucks were going a maximum of 40 miles per hour. The night was described by all those who testified as "foggy" and "dark." Mr. Smith stated he was following the other truck at a distance of 300 to 400 feet while Mr. McCon estimated the distance to be 35 to 40 feet. At one point in his deposed testimony, McCon said it was "forty feet at least." The trucks traveled together for a period of five to ten minutes when Smith noticed McCon's truck had swerved suddenly onto the right shoulder. Smith wondered what caused the truck to do so and in the next instant saw "something blue" on the roadway and felt his truck run over the object. He proceeded down the road to the weigh station and requested the employee there to drive him back to the scene of the incident because he wanted to ascertain what he had hit. When they arrived at the scene they discovered the "object" had been Bennett Rayford, Jr., a 31-year-old black male. An unidentified person was administering mouth-to-mouth resuscitation to Mr. Rayford, but he died a few moments later.
Medical evidence showed that at the time of his death Rayford's blood alcohol content was 0.17 per cent. The testimony of the two witnesses, McCon and Smith, established clearly Rayford was lying motionless in the center of the northbound lane at the moment of impact. He was apparently asleep or unconscious. Testimony by various *550 law enforcement officials established there had been previous incidents in which the decedent had been found asleep and intoxicated in the roadway.
Rayford's parents, Bennett and Rosalee Rayford, filed a wrongful death-survival action against the driver of the truck, Smith; his employer, Saia; and Saia's insurer, Transport Insurance Company. After a trial by jury a verdict was rendered in favor of all defendants and against the plaintiffs, finding Smith to be free of fault. Plaintiffs then filed this appeal.
Plaintiffs raise three errors on appeal. The first two deal with the trial court's refusal to exclude from the jury all evidence of Mr. Rayford's previous occasions of intoxication and lying in the roadway. Plaintiffs insist the holding in Baumgartner v. State Farm Mut. Auto Ins. Co., 356 So.2d 400 (La.1978), rehearing denied 1978, stands for the proposition the plaintiff's contributory negligence is no longer a bar in pedestrian-motorist cases, therefore any evidence attempting to establish Mr. Rayford's contributory negligence is inadmissible. Plaintiffs contend the evidence indicating the decedent had a history of alcoholism and a pattern of sleeping in the road was aimed at establishing his contributory negligence and was so prejudicial as to cause the jury to render a verdict which was highly influenced by this irrelevant evidence.
While we agree the evidence concerning prior incidents of intoxication may have been irrelevant, for reasons explained below, and may have prejudiced the jury, we do not find the introduction of such evidence to necessitate a reversal of the jury verdict. It has been held when evidence has been improperly admitted which might have unduly prejudiced the jury, the appellate court is required to make an independent finding as to liability. Suhor v. Gusse, 388 So.2d 755 (La.1980); Baker v. D.H. Holmes Company, Ltd., 285 So.2d 282 (La.App. 4th Cir.1973); Cambrice v. Fern Supply Co., Inc., 285 So.2d 863 (La. App. 4th Cir.1973). Therefore, based on our independent review of the evidence, we address plaintiffs' other assigned error: whether or not the evidence at trial proved Clavon Smith to be negligent.
After carefully reviewing the record we are satisfied the plaintiffs failed to prove by a preponderance of the evidence Mr. Smith was negligent. We reach this conclusion without regard to certain facts which plaintiffs contend were used to establish Mr. Rayford's contributory negligence. It is irrelevant whether or not Mr. Rayford had a history of alcoholism and whether or not he had slept in the road on other occasions. It is even irrelevant (except to explain how he happened to be in the road asleep) that he was intoxicated the night of the accident. The pertinent facts concerning Mr. Rayford's actions were that he was lying motionless in the middle of the northbound lane of traffic on a rural, unlighted highway at 3:30 A.M. on a foggy night. These are not facts which relate to his contributory negligence but are simply the facts which establish the setting of the accident.
Although the testimony of the two witnesses was conflicting, we are satisfied Mr. Smith established he was proceeding at a safe speed and at a safe distance behind the other truck. The composite testimony of the truck drivers discloses their speed to have been anywhere from 25 to 40 miles per hour. It is obvious they were in full compliance with La.R.S. 32:64, which requires that one drive within the maximum speed limit established and at a speed no greater than that which is reasonable and prudent, considering the existing weather conditions. As regards the distance between the two vehicles, McCon testified: "I'll tell you it's hard to say looking back down a trailer and looking at lights in the fog, but I would say he was some thirty-five or forty feet behind me." At another point in his deposed testimony, McCon said: "Whenever I swerved over to miss the object, I never looked back until I was sure I was clear of the object and whenever I knew I was clear of the object I started back on the lane and I would see his lights, you know, coming straight through. He *551 didn't swerve one way or the other. * * * He tried to straddle it." This testimony is highly indicative of Smith being behind McCon a great deal farther than 40 feet. Even if Smith was not in strict compliance with La.R.S. 32:81(B), (prohibiting a "motor truck" from following another one within 400 feet), his violation was not causative of the accident. The greatly reduced speed at which the trucks were traveling negated the obvious purpose of the 400 foot requirement, i.e., to avoid rear end collisions and allow faster moving traffic more room to pass safely. Having complied with the law by reducing their speed commensurate with existing conditions, there was no risk created by not maintaining a 400 foot separation. Night driving and a heavy fog limited the driver's visability which, in turn, dictated the combination of speed and distance necessary for safe travel.
We recognize a motorist has a high degree of care imposed upon him and must be ever aware of objects which may appear in his lane of traffic. However, we would be imposing an unreasonable duty were we to say in a situation such as this, with the driver proceeding at a reasonable speed and at a reasonable distance behind the lead vehicle, that he should have seen the man lying in the middle of his lane of traffic. Considering the lighting conditions, the fog conditions, the fact that it was a black man wearing dark clothing, lying motionless in the middle of the lane of traffic, we cannot say this driver was negligent in failing to observe this person in time to avoid the accident.[2]
Plaintiffs contend that because Mr. McCon was able to avoid striking the decedent, Mr. Smith was obviously negligent in failing to do the same. We disagree. Since Mr. McCon's truck had no other vehicle in front of it, he would naturally be concerned only with the road surface. He had a better field of vision than the second truck, his vision being limited only by the darkness and the weather conditions. Mr. Smith, on the other hand, testified that because of the fog he was watching McCon's taillights in order to steer his truck more accurately. When the McCon truck swerved, Mr. Smith's vision was focused on the taillights in front of him. He testified by the time he became aware the preceding truck had swerved, he saw the "flash of blue" and realized he had hit an object in the road. Nothing in this scenario seems unreasonable to us. Mr. Smith acted and reacted as a reasonable truck driver under the circumstances. In addition, Mr. McCon testified he only "barely missed" striking "the object" by suddenly swerving the truck off the roadway. He stated he did not recognize the object as being a person. Under these circumstances the facts indicate only that Mr. McCon was extremely fortunate in avoiding striking Mr. Rayford, rather than that Mr. Smith was negligent in failing to be able to do the same.
Because appellants rely so strongly on the Baumgartner decision, we feel it is worthwhile to note a recent interpretation of it by the Supreme Court. In Aetna Cas. and Sur. Company v. Nero, 425 So.2d 730 (La.1983) a motorist, driving at night, struck a pedestrian who attempted to cross the street in an area not marked as a crosswalk. The injured person was a black male, dressed in dark clothes, and was found to be intoxicated. The driver of the car was found to be sober and driving well within the speed limit. The trial court found no negligence on the motorist's part, this court reversed, finding she had been at fault [415 So.2d 390 (La.App. 1st Cir.1982)] and the Supreme Court reversed this court, agreeing with the trial court no fault had been proved.
The Supreme Court in Aetna explained its earlier decision (Baumgartner) as follows on p. 733:

*552 "The Court of Appeal appears to have misapplied Baumgartner in the instant case. In Baumgartner this Court stated that in motor vehicle/pedestrian collisions, contributory negligence is not available as a defense and thus the last clear chance doctrine, used to avoid the harsh results of contributory negligence, is not at issue. That ruling was designed to compensate for the lack of mutuality of risks involved between motor vehicles and pedestrians. However, we did not impose absolute liability on a driver of an automobile simply when there is a collision between a car and a person. Nor did we say that the motorist is to be held liable irrespective of fault on his part. In fact, in Baumgartner we clearly stated `that a motorist who exercises all reasonable care to protect a pedestrian, who nonetheless suffers injury, is not at fault.' 356 So.2d at 406. The operator of a motor vehicle must therefore be at fault in order to be held liable. This requisite was not eliminated by Baumgartner." (Emphasis added.)
Using this interpretation as a guideline, we conclude the motorist in this case indeed exercised "all reasonable care" to protect the pedestrian. However, the circumstances surrounding the incident made the accident unavoidable. To impose liability in this case would indeed be inflicting an "absolute liability" on the driver simply because there had been an accident involving a "pedestrian"[3] and a motorist.
For these reasons the judgment of the trial court is affirmed. Costs are to be paid by appellants.
AFFIRMED.
NOTES
[1] Although Mr. Smith's first name is listed as "Clavon" on the petition, at trial it is listed as "Claybourn."
[2] See Corkern v. McWilliams, 228 So.2d 236 (La. App. 1st Cir.1969), a case with similar facts, in which this court found no liability on the part of a motorist who struck a man lying in the road at night. See also Osby v. Harris, 375 So.2d 181 (La.App. 2d Cir.1979), a case with facts even more favorable to plaintiff, in which recovery was denied when the pedestrian suddenly crossed a highway in an area where there was no crosswalk.
[3] It is questionable whether the person struck and killed by defendant can, in legal contemplation or by definition, be termed a "pedestrian." He was not walking, running, traveling on foot, or otherwise engaged in the use of his body to transport himself from one place to another place. However, even with that more favorable legal status, which we have accorded him for purposes of this opinion, there is no liability to be assessed herein.