Mrs. Willie Lee **HARRIS**, etc.

v.

**BROWNING–FERRIS INDUSTRIES CHEMICAL SERVICES, INC., et al.**

No. 81–644–B.

United States District Court, M.D. Louisiana.

May 9, 1986.

See also, D.C., 100 F.R.D. 775.

Russell L. Dornier, Gary & Field, Baton Rouge, La., for plaintiffs, Mrs. Willie Lee Harris, Gregory Cardell Harris and Tamish Danielle Harris.

Robert Henry Sarpy, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants, Browning-Ferris Industries Chemical Services, Inc., and ABC Ins. Co.

J. David Forsyth, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, La., for Volkswagen Aktiengesellscraf (VWAG).

POLOZOLA, District Judge:

This diversity action was filed by Mrs. Willie Lee Harris, individually and on behalf of her children,[1] to recover damages arising out of an automobile accident in which Willie O. Harris was killed. The court finds that the sole proximate cause of this accident was the negligence of Willie O. Harris.[2] Therefore, plaintiffs' suit must be dismissed with prejudice.

## I. Background

This suit was originally filed against Browning-Ferris Industries, Inc. (BFI) and its insurer on August 5, 1981. Plaintiffs claimed that Willie O. Harris was killed in an automobile accident which occurred on March 2, 1981, when the Harris' vehicle collided with the rear of a BFI truck being driven by Gary C. Tilley[3] at approximately 10:30 p.m. on I-10 near Sulphur, Louisiana. On June 3, 1983, the plaintiffs filed an amended complaint which named Volkswagenwerk Aktienqesellschaft (VWAG) as an additional defendant.[4] Plaintiffs' suit against VWAG was filed well after the Louisiana one year statute of limitations.[5] Therefore, in order to recover against VWAG, the plaintiffs must prove that BFI and VWAG were joint tort-feasors.[6] Since

---

1. Willie O. Harris was survived by two children: Gregory Cardell Harris and Tamisha Danielle Harris. Both the decedent and the plaintiff are named "Willie", the former "Willie O." and the latter "Willie Lee".

2. On April 10, 1986, the court issued a minute entry which stated that there was no negligence or other liability on the part of BFI, Inc. The court noted in its minute entry that final judgment would not be entered until more detailed written reasons were assigned by the court. This opinion now sets forth the court's reasons for dismissing plaintiff's suit.

3. It is clear that Gary C. Tilley was acting in the course and scope of his employment with BFI at the time of the accident. An employer is liable for the negligent acts of its employees acting in the course and scope of his employment. Article 2320 Louisiana Civil Code; *Roberts v. State,*

*Through Louisiana Health & Human Resources,* 404 So.2d 1221 (La.1981).

4. Plaintiffs claim VWAG was negligent in not building a crashworthy vehicle.

5. At the time suit was filed article 3536 of the Louisiana Civil Code was applicable. By Act of 1973, Chapter 4 of Title XXIV of the Louisiana Code of 1870, consisting of articles 3528 through 3554 was revised, amended and reenacted to consist of articles 3492 through 3504, effective January 1, 1984. Article 3492 now applies. However, there was no change in Louisiana law or jurisprudence as a result of the amendment.

6. Article 3552 of the Louisiana Civil Code was applicable at the time suit was filed. As a result of the amendments resulting from Act 173 of

the court has found that BFI was not negligent, the suit against VWAG must be dismissed because it was not timely filed within one year of the date of the accident.

Prior to the trial, the court severed the issue of liability and damages. The court also severed the issue of whether VWAG was negligent.[7] Thus, the sole issue before the court is whether BFI was liable to the plaintiffs as a result of the March 2, 1981 accident.[8]

## II. Contentions of the Parties

The plaintiffs urge two basic grounds for recovery. Plaintiffs first contend that BFI's driver was negligent because he changed lanes when it was not safe to do so in violation of LSA R.S. 32:79 and 32:104 A. Plaintiffs also contend that even if the truck driver changed lanes safely, he was traveling in the center lane of the interstate at such a slow rate of speed that it posed a danger to other drivers on the highway, including Willie O. Harris, in violation of LSA R.S. 32:63 and 32:64.

BFI denies any liability on its part. BFI contends that its driver was proceeding in a safe and proper manner at a lawful rate of speed on the interstate when its truck was struck from the rear by Willie O. Harris.

BFI further contends that at the time of the accident the decedent was obviously intoxicated with a blood alcohol content of 0.260 which caused him to proceed in an unsafe manner on the highway. More specifically, BFI contends that Willie O. Harris did not follow at a safe distance in violation of LSA R.S. 32:81, failed to timely apply his brakes and failed to maintain a proper lookout while proceeding on the interstate.

## III. The Applicable Law

It is settled law in Louisiana that a driver of a vehicle cannot suddenly change lanes without first determining whether it is safe to do so. A driver who suddenly and without warning changes lanes without allowing the following party sufficient time to stop or change lanes to avoid the accident may be found negligent.[9] In fact, the burden is placed upon the driver who changed lanes to demonstrate that the resulting collision did not result from the sudden change in lanes.[10]

The Louisiana jurisprudence also provides that the driver of a following vehicle must proceed at a distance that is prudent, safe and reasonable.[11] Indeed, there is a presumption of negligence on the part of the driver of a following vehicle which collides with the rear of a vehicle it is follow-

1983, articles 3528 through 3554 were revised, amended and reenacted effective January 1, 1984. Article 3503 now applies. There was no change made in the law or jurisprudence as a result of the amendment.

7. Because VWAG could not be held liable unless the court found BFI was jointly and solidarily liable with the VWAG, the court and the parties believed it would be in the interest of judicial economy to try the liability of BFI first. See Rule 42(b), Federal Rules of Civil Procedure.

8. The case was submitted to the court on briefs and on the following evidence: (1) the depositions of (a) Gary C. Tilley [Plaintiff's exhibit # 1]; (b) Lieutenant Jimmy Fontenot [Plaintiff's exhibit # 2]; (c) Trooper Bonnie Heinen [Plaintiff's exhibit # 3]; (d) Robert Adams, Jr. [Defendant's exhibit # 1]; (e) Johnny Byrd [Defendant's exhibit # 2]; (f) Dr. Richard Landry [Defendant's exhibit # 3]; and (g) Francis Touchet [Defendant's exhibit # 4]; (2) The Emergency room records of the treatment of the decedent from West Calcasieu-Cameron Hospital [De-

fendant's exhibit # 5]; (3) photographs of (a) the vehicles involved in the accident [Defendant's exhibits # 6 and # 8]; and (b) the scene of the accident [Defendant's exhibit # 7].

9. Raymond v. Deaton, 423 So.2d 724 (La.App. 1st Cir.1982); Deumite v. West Bank Contractors, 343 So.2d 289 (La.App. 1st Cir.1977); Barnett v. Guillot, 294 So.2d 907 (La.App.2d Cir. 1974); Trabeaux v. Sanchez, 279 So.2d 793 (La. App. 4th Cir.1973); Bailey v. Moore, 276 So.2d 708 (La.App. 1st Cir.1973); Jefferson v. Strickland, 242 So.2d 582 (La.App. 1st Cir.1970) and Anthony v. State Farm Mutual Insurance Company, 227 So.2d 180 (La.App.2d Cir.1969).

10. Raymond v. Deaton, 423 So.2d 724 (La.App. 1st Cir.1982) and Deumite v. West Bank Contractors, 343 So.2d 289 (La.App. 1st Cir.1977).

11. See Coleman v. Van Dyke, 277 So.2d 709 (La.App.2d Cir.1973) and Calvert Fire Insurance Co. v. Barlow, 215 So.2d 392 (La.App.2d Cir. 1968).

ing.[12] Such a presumption may be rebutted by a showing that the driver of the following vehicle kept his vehicle under control, observed the lead vehicle and was following at a safe distance under the circumstances.[13]

Article 2315 of the Louisiana Civil Code, which provides in pertinent part that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it," is the basis for recovery under Louisiana law for the harm that is caused by the negligence of another.[14] In order to prevail in this case, it is incumbant upon the plaintiff to prove, by a preponderance of the evidence, that (1) BFI was negligent; (2) the injury which the plaintiff has suffered was, in fact, caused by such negligence; and (3) there was actual damages suffered by the plaintiffs.[15]

The Louisiana Legislature has enacted a statutory scheme regulating the use of motor vehicles upon public highways.[16] This statutory scheme supports and is supported by the jurisprudence set forth above. Thus, La.R.S. 32:79 sets forth the duty of care for a lead vehicle driving on a roadway laned for traffic as follows:

Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition, to all others consistent herewith, shall apply.

(1) A vehicle shall be driven as near as practical and entirely within a single lane and shall not be moved from such lane until such driver has first ascertained that such movement can be made with safety.

In addition, La.R.S. 32:104 A provides that:

No person shall turn a vehicle at any intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or *otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.* (Emphasis supplied.)

The duty of a driver of a vehicle following another vehicle is set forth in La.R.S. 32:81, which provides that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." Furthermore, La.R.S. 32:63 and 32:64 govern the speeds at which a motor vehicle may be operated upon the state's highways. These statutes provide:

§ 63. Establishing of speed zones

A. Whenever the department shall determine upon the basis of an engineering and traffic investigation that any maximum speed set forth in this Chapter is greater or less than is reasonable or safe under the conditions found to exist upon any highway of this state, or any part thereof, the department may determine and declare a reasonable and safe maximum speed limit thereat, which, when appropriate signs giving notice thereof are erected, shall be effective at all times or at such specific times as may be determined by the department.

B. Whenever the department determines on the basis of an engineering and traffic investigation that slow speeds on any highway of this state, or part thereof, consistently impede the normal and reasonable movement of traffic, the department may determine and declare a

---

**12.** *Eubanks v. Brasseal,* 310 So.2d 550 (La. 1975); *State Farm Mutual Automobile Insurance Co. v. Hoerner,* 426 So.2d 205 (La.App. 4th Cir.1982), *writ denied,* 433 So.2d 154 (1983); *Lewis v. Variste,* 422 So.2d 222 (La.App. 4th Cir.1982).

**13.** *Eubanks v. Brasseal,* 310 So.2d 550 (La.1975) and *Cosse v. Bruley,* 445 So.2d 41 (La.App. 4th Cir.1984).

**14.** See generally, *Owens v. Martin,* 449 So.2d 448 (La.1984).

**15.** *Townsend v. State, Through Dept. of Highways,* 322 So.2d 139 (La.1975) and *Jordan v. Travelers Insurance Co.,* 257 La. 995, 245 So.2d 151 (1971).

**16.** See generally Louisiana Revised Statutes 32:1–32:1604.

minimum speed limit thereat, below which no person shall drive a vehicle except when necessary for safe operation or in compliance with law. Minimum speeds so determined shall become effective upon the erection of signs giving notice thereof. Acts 1962, No. 310, § 1.

§ 64. General speed law

A. No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather, and in no event at a speed in excess of the maximum speeds established by this Chapter or regulation of the department made pursuant thereto.

B. Except when a special hazard exists that requires lower speed for compliance with paragraph A of this section, no person shall operate or drive a motor vehicle upon the highways of this state at such a slow speed as to impede the normal and reasonable movement of traffic. Acts 1962, No. 310 § 1.

C. Rolling roadblocks shall be prohibited from operating on all Interstate highways in the state.

## IV. Findings of Fact

The primary issues before the court are factual in nature. The accident upon which this suit is based occurred on Monday, March 2, 1981, at approximately 10:30 p.m. on Interstate Highway 10 in the city of Sulphur, Louisiana. At the time of the accident, Gary C. Tilley was driving a 100 barrel vacuum, 18 wheeler GMC truck with a 1975 trailer, both of which were owned by BFI. Tilley was acting within the scope of his employment with BFI at the time of the accident. Willie O. Harris was driving a 1973 Volkswagen "Beetle" type two door vehicle which he owned when the accident occurred.

Just prior to the accident, Tilley had been at the BFI plant which is located on a service road south of I–10 near the intersection of I–10 and Louisiana Highway 108 ["La.108"]. After leaving the plant, Tilley took the service road to La. 108, and then proceeded onto an overpass over I–10. After crossing I–10 by way of the overpass, Tilley turned right onto a loop leading to the entrance ramp of I–10. Tilley then proceeded from the entrance ramp onto I–10 in a westerly direction. After getting onto I–10, the hood of the BFI truck became loose and flew open. Tilley pulled his vehicle onto the shoulder of the road and then stopped in the emergency lane to shut the hood. After fixing the hood of the truck, Tilley went from the emergency lane to the first lane of the three lanes of I–10. Thereafter, Tilley pulled into the center lane. There is no evidence of any other traffic on I–10 at this time. After traveling approximately 400 feet at a rate of 40–45 miles per hour in the center lane, Tilley heard a loud noise and felt a jar at the rear of the vehicle. Tilley looked to the rear and discovered that someone had hit the rear of his truck. He then gradually slowed his truck down and moved into the emergency lane. Only after stopping in the emergency lane did Tilley ascertain that the vehicle which had hit the rear of his truck was a 1973 Volkswagen Beetle driven by Willie O. Harris. Debris and other evidence at the scene revealed that the accident had occurred in the center lane of I–10 approximately ½ mile from the intersection of the overpass on La. 108 and I–10. There were no skid marks leading up to the point of the impact.

Willie O. Harris was treated in the emergency room at West Calcasieu-Cameron Hospital in Sulphur, Louisiana, where he was later pronounced dead by Dr. G. Stanley Smith. While at the hospital, a blood sample was drawn from Willie O. Harris by Dr. Richard Landry. A blood alcohol test was performed on this sample which revealed that Willie O. Harris had a blood alcohol level of 0.260.

▪▪▪ The evidence presented at the trial in this case does not support plaintiffs' contention that the truck driver made a sudden lane change in front of Willie O. Harris' vehicle. The evidence does reveal

that Tilley changed from the outer lane to the center lane in a safe manner. Furthermore, the BFI truck had been traveling in the middle lane for some distance before the Harris vehicle ran into the rear of the truck. It is significant that no skid marks of any kind were left at the scene. Furthermore, there were no other vehicles on the road at this time except the two vehicles involved in the accident. The evidence of the accident scene indicates that Harris had two different lanes to move his vehicle to without being obstructed by other traffic. Furthermore, Tilley had traveled 400 feet in the center lane before the accident occurred. This conclusion, which is supported by the evidence, disputes plaintiffs' theory that Tilley suddenly changed lanes in front of Harris. Tilley's deposition testimony as to how the accident happened and the distance he traveled is verified by the statements he made to the state police immediately following the accident. Since the court has concluded that the evidence presented fails to show that the truck driven by Tilley made a sudden lane change, but does show Harris struck the truck from the rear, there is a presumption of negligence on the part of Harris.[17] The court finds that plaintiffs' have failed to rebut the presumption of negligence on the part of Harris. As noted earlier, this presumption of negligence may be rebutted by demonstrating that Harris kept his vehicle under control, observed the lead vehicle and was following at a safe distance under the circumstances.[18] The record is void of any evidence which would show that Harris had his vehicle under control, was maintaining a proper lookout and was following at a safe distance. To the contrary, the evidence reveals that the Harris vehicle struck the BFI truck from the rear and there were no skid marks which indicate an attempt on the part of Harris to stop to avoid the collision. Furthermore, as noted earlier, the evidence also reveals that the Harris vehicle was the first vehicle to catch up with the BFI truck after the truck reentered I–10, which means there were two other lanes available for the Harris vehicle to use to travel or to avoid the accident. This failure to use brakes and change lanes, coupled with the presumption of negligence, leads the court to conclude that the sole proximate cause of this accident was the negligence of Harris.

 There is also another matter which the court wishes to discuss separately—the highly intoxicated condition of Harris at the time of the accident.[19] The blood samples taken from Harris following the accident indicated Harris had a blood alcohol level of 0.260. BFI presented the testimony of Francis Touchet to demonstrate the effect of a blood alcohol level of 0.260 on Harris' ability to operate a motor vehicle. Plaintiffs' objected to Touchet's testimony, but the court finds that he is sufficiently qualified by training, education and experience to give an expert opinion in this case.[20] Touchet testified that a blood alcohol reading of 0.260 would mean that Harris was "very intoxicated" at the time of the accident.[21] If Harris was very intoxicated at the time of the accident, the court can and does infer that this "very intoxicated" condition would impair his ability to properly operate his vehicle on the highway. Thus, the intoxicated condition of Harris would only supplement the findings previously made by the court that Harris was solely responsible for the accident.

---

**17.** *Eubanks v. Brasseal,* 310 So.2d 550 (La. 1975); *State Farm Mutual Automobile Insurance Co. v. Hoerner,* 426 So.2d 205 (La.App. 4th Cir.1982), *writ denied* 433 So.2d 154 (1983); *Lewis v. Variste,* 422 So.2d 222 (La.App. 4th Cir.1982).

**18.** *Cosse v. Bruley,* 445 So.2d 41 (La.App. 4th Cir.1984); *Eubanks v. Brasseal,* 310 So.2d 550 (La.1975).

**19.** The court will discuss the admissibility of the blood alcohol test in a separate part of this opinion.

**20.** Rule 702 F.R.E.; *Champagne v. McDonald,* 355 So.2d 1335 (La.App. 3rd Cir.1978); *Brown v. Collins,* 223 So.2d 453 (La.App. 3rd Cir.1969); *Parker v. Kroeger's, Inc.,* 394 So.2d 1178 (La. 1981).

**21.** Touchet Dep., pp. 36–38.

■ Plaintiffs also contend that BFI should be held liable because of the speed the BFI vehicle was traveling prior to the accident. The testimony places the speed from 40–50 miles per hour. After considering the evidence on this issue, the court concludes that the speed of the BFI truck did not cause or contribute to the accident. Whether the truck's speed was 40, 45 or 50 miles per hour and whether it was below the minimum speed for interstate travel, the court finds that there is no evidence before it to indicate that the BFI truck was traveling at such a slow speed that it obstructed the safe travel of vehicles and caused the accident. The truck lights were on at the time of the accident, the vehicle was traveling at a reasonable speed and the photographs of the accident scene show the site of the accident to be a straight, unobstructed highway. Harris had an obligation to maintain a proper lookout and to be aware of objects which may appear in his lane.[22] Photographs of the truck involved in this accident show it to be a large truck. Based on this evidence and the prior evidence previously discussed, the court finds that Harris was negligent at the time of the accident and his negligence was the sole legal cause of the accident. The court further concludes that BFI and its driver were not negligent and did not cause the accident in which Harris was killed.

### V. Evidentiary Issues

The parties have filed a number of objections to the evidence. Each of these objections will be considered separately.

### 1. The Accident Report

■ Plaintiffs object to the introduction of the police accident report except for a

statement made to the officers by Tilley.[23] Rule 803(8) of the Federal Rules of Evidence applies. The first-hand observations of the police officers which are incorporated in the report are admissible. Since plaintiffs have no objection to the Tilley statement, the court finds that any first-hand observation of the officers which are set forth in the report are admissible. In other respects, the court sustains plaintiffs' objection to the accident report.

### 2. The Blood Alcohol Test Results

■ Plaintiffs also object to the admission of the results of the blood alcohol analysis on the ground that the defendants have failed to prove the chain of custody from the time the blood was drawn from Harris until the blood was tested at Southwest Regional Crime Laboratory.[24] Specifically, the plaintiffs contend that the defendants have failed to produce (1) the police officer who transported the blood alcohol kit from the scene of the accident to the Calcasieu-Cameron Hospital and (2) the person who transported the drawn blood sample from the hospital to the crime lab. The defendants contend, initially, and the court agrees, that it is irrelevant to the issue of establishing the chain of custody of the blood sample to demonstrate the identity of the individual who transported the blood alcohol kit from the scene of the accident to Calcasieu-Cameron Hospital. The defendants also argue that although Officer Milton Perry could not be found, this "link" in the chain of custody of the drawn blood sample has been proved by other evidence and testimony. This evidence consisted of: (1) testimony relating to established proce-

**22.** *Rayford v. Saia Motor Freight Lines, Inc.*, 442 So.2d 548 (La.App. 1st Cir.1983), *writ denied*, 444 So.2d 1242 (La.1984).

**23.** The Tilley statement provides:
he was parked on the emergency lane and he looked and nothing was coming behind him, so he put on his blinker and got on I-10, then got in the inside lane and went about 400 feet and heard a loud noise and felt a jar to his truck and looked behind him, discovering that

someone had run into the rear of his truck, so he pulled over and got out.

**24.** Plaintiffs basically rely on *Pearce v. Gunter*, 238 So.2d 534 (La.App. 3rd Cir.1970) and *Lapoint v. Breaux*, 395 So.2d 1377 (La.App. 1st Cir), *writ denied*, 399 So.2d 611 (La.1981), which provide that in civil cases the chain of possession of the blood sample must be demonstrated in order for evidence relating to the analysis of the blood sample to be admissible.

dures of the police department in handling blood alcohol samples; (2) testimony of police personnel from the business records of the police department; and (3) testimony of Dr. Richard Landry from hospital business records.[25] The court concludes, therefore, that the defendants have submitted sufficient testimony and other evidence to establish that it was Officer Milton Perry who transported the blood sample from the hospital after it was drawn by Dr. Richard Landry to the crime lab where it was received by Officer Byrd. This necessary link being established, the court finds that the defendants have demonstrated the chain of custody of the drawn blood sample as required by *Pearce v. Gunter*, 238 So.2d 534 (La.App. 3rd Cir.1970) and *Lapoint v. Breaux*, 395 So.2d 1377 (La.App.1st Cir.), *writ denied*, 399 So.2d 611 (La.1981).

The plaintiffs also contend that even if the defendants have demonstrated the chain of custody of the drawn blood sample, there is no evidence in the record from a competent expert witness to interpret the effect of the blood alcohol level on a person's ability to operate an automobile.[26] Basically, the plaintiffs contend that the only evidence before this court of the effect of a blood alcohol level of 0.260 on the ability of a person to operate a motor vehicle was that of Francis Touchet, who was not qualified to give expert testimony on this subject. The court has previously rejected this argument.[27]

■■■ Finally, the plaintiffs contend it is a violation of due process to have drawn blood from Harris when he was not under arrest. This argument is without merit. The testimony and other evidence presented by the defendants regarding the blood alcohol analysis made of Harris' blood are admissible.[28]

**C. Deposition of Lt. Jimmy Fontenot**

■■■ Plaintiffs object to the testimony of Lt. Jimmy Fontenot wherein he repeated a statement made by Tilley immediately after the accident regarding how the accident occurred. The court has previously allowed, at plaintiff's request, another part of Tilley's explanation of the accident to the investigating officers. The court sees no reason to exclude the remaining part of the statement. Furthermore, plaintiffs thoroughly cross-examined Tilley on his version of the accident. Thus, even if the statement testified to by Lt. Fontenot may have been hearsay, the court finds it should be admitted under Rules 803(1)–(3), (24) and 106 of the Federal Rules of Evidence.

**D. Miscellaneous Objections.**

Numerous objections were made regarding opinion testimony and relevancy during

---

**25.** Those documents which these witnesses used in their testimony include: (1) Police Officer Milton Perry's report on the chain of possession, stating the subject's name, the blood collector's name and the police officer's initials; (2) the Laboratory Report of the South West Regional Crime Laboratory, again stating that the submitting officer was Milton Perry; (3) the Calcasieu Parish Sheriff Department's Evidence Receipt showing that the blood alcohol kit was received by Officer Johnny Byrd; (4) the Identification Division Report of Examination of the Calcasieu Parish Sheriff's Department, stating in the "Details" Section that Officer Byrd received the blood alcohol kit from Officer Perry, to be entered at the I.D. Bureau for blood alcohol examination. Plaintiffs' have objected to these documents on the basis of hearsay. The court finds, however, that these documents are admissible under Rules 803(6) and (8) of the Federal Rules of Evidence.

**26.** See *Prestenbach v. Sentry Insurance Company*, 340 So.2d 1331 (La.1976), wherein the court held that the statutory presumption of intoxication in criminal cases is not applicable to civil cases and *Champagne v. McDonald*, 355 So.2d 1335, 1343 (La.App. 3rd Cir.1978), wherein the court commented upon "the right of a civil litigant to introduce evidence of a person's blood alcohol content and *to have competent expert witnesses interpret the effects of such on a person's ability to operate a motor vehicle.*" (Emphasis added.)

**27.** See page 11 of this opinion.

**28.** *Brown v. Collins*, 223 So.2d 453 (La.App. 3rd Cir.1969); *Bradley v. Allstate Insurance Co.*, 307 So.2d 132 (La.App. 1st Cir.1974), *writ denied*, 310 So.2d 644 (La.1975).

the course of the deposition testimony. Lay opinions may be given under Rule 701. The court finds the objections to be without merit except to the extent specifically discussed in this opinion. None of the objections would affect the specific findings of fact made by the court in the first part of this opinion.

### VI. Conclusion

To summarize, the court finds that the plaintiffs have failed to prove by a preponderance of the evidence that Tilley was negligent and his negligence was a legal cause of Harris' death. The court does find that Harris was negligent and that his negligence was the sole and only legal cause of the accident and his resulting death. While the evidence of Harris' intoxicated condition is supportive of the court's findings, the court wishes to emphasize that the court would have reached the same result even if there had been no evidence presented regarding Harris' blood alcohol content.

Since the court has concluded that the suit against BFI should be dismissed, the court must also dismiss plaintiffs' suit against VWAG. Since there cannot be solidary liability in this case, plaintiffs' suit against VWAG has prescribed.

Therefore:

IT IS ORDERED that plaintiffs' suit be dismissed as to all defendants with prejudice.

Judgment shall be entered accordingly.